UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSE AREVALO,

                Petitioner,

      -against-

DALE ARTUS,

                Respondent.
------------------------------------------------------------X

**DECISION AND ORDER**

2:09-CV-559 (WFK)

**WILLIAM F. KUNTZ II, United States District Judge**

Jose Arevalo ("Petitioner") brings this *pro se* Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, attacking his 2006 state convictions resulting from a robbery in Nassau County, New York. Dkt. 1 ("Petition"). For the reasons set forth below, the Petition is DENIED in its entirety.

## BACKGROUND

### I. Relevant Factual History

#### A. Alleged Crime, Arrest, and Charges

On March 11, 2006, nineteen-year-old Julio Apolinar was walking home with his mother when they were accosted by Petitioner and an accomplice, Marco Hernandez. Dkt. 5 ("Answer") at 1. After Mr. Apolinar asked his mother to go home without him, Petitioner and Mr. Hernandez forcibly took Mr. Apolinar's shirt and two necklaces, allegedly using a knife in the process. *Id.*

Later that day, Mr. Apolinar identified Petitioner and Mr. Hernandez as the men who robbed him. *Id.* Mr. Apolinar made the identification while riding in a police car and observing Petitioner and Mr. Hernandez outside a deli. *Id.* Police officers chased Petitioner and Mr. Hernandez through the deli into a parking lot and arrested them there. *Id.* Mr. Apolinar's shirt

1

was found on the ground near Petitioner and Mr. Hernandez, and the two necklaces were found in Mr. Hernandez's back pocket. *Id.*; Dkt. 20-6 ("Suppression Ruling") at 1. Petitioner and Mr. Hernandez both waived their *Miranda* and other constitutional rights and admitted they had jointly robbed Mr. Apolinar at knifepoint. Answer at 2. Petitioner and Mr. Hernandez were charged with First Degree Robbery in violation of N.Y. Penal Law §160.15(3), Second Degree Robbery in violation of N.Y. Penal Law §160.10(1), Fourth Degree Grand Larceny in violation of N.Y. Penal Law §155.30(5), and Fifth Degree Criminal Possession of Stolen Property in violation of N.Y. Penal Law §165.40. *Id.*

### B. The Suppression Hearing and Trial

On August 9, 10, and 11, 2006, Acting Justice David P. Sullivan of the Nassau County Supreme Court in Mineola, New York conducted a suppression hearing to determine, among other issues, whether the statements given to the police by Petitioner and Mr. Hernandez were admissible. *See* Dkt. 20-14 ("Suppression Hearing Part I"); Dkt. 20-15 ("Suppression Hearing Part II"). Detective Luis Salazar, who interviewed Petitioner and Mr. Hernandez and took their statements, testified at the suppression hearing. Suppression Hearing Part I at 59-71; Suppression Hearing Part II at 2-67. Justice Sullivan ruled, *inter alia,* that Petitioner and Mr. Hernandez knowingly and intelligently waived their rights, and therefore their statements to the police were admissible. Suppression Ruling at 2.

Petitioner and Mr. Hernandez were each convicted of Second Degree Robbery, Fourth Degree Grand Larceny, and Fifth Degree Criminal Possession of Stolen Property after a joint jury trial in October 2006. Dkt. 20-23 ("Trial Transcript Part XIII") at 12-16. Petitioner and Mr. Hernandez were each acquitted of First Degree Robbery. *Id.* at 12.

### C. The Sentencing

On January 19, 2007, Justice Sullivan sentenced Petitioner to a determinate term of ten years in prison for the Second Degree Robbery count, a concurrent term of one and a third to four years for Fourth Degree Grand Larceny, and one year concurrently for Fifth Degree Criminal Possession of Stolen Property. Dkt. 20-17 ("Sentencing") at 9. At sentencing, Petitioner's counsel ("Trial Counsel") moved to set aside the verdict pursuant to N.Y. Crim. Proc. Law §330.30 on the grounds of, *inter alia*, ineffective assistance of counsel. *Id.* at 6. Justice Sullivan denied the motion, ruling Petitioner had received "meaningful representation" and effective assistance of counsel. *Id.* at 7.

### D. The Direct Appeal

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department ("Second Department") on the following grounds: (1) ineffective assistance of counsel; (2) rights violation under the Vienna Convention; (3) involuntarily obtained statement; (4) insufficient evidence for jury verdict; and (5) excessive sentence. *People v. Arevalo*, 862 N.Y.S.2d 586, 587-88 (2d Dep't 2008). On August 12, 2008, the Second Department affirmed Petitioner's conviction on all grounds. *Id.*

On October 3, 2008, the New York Court of Appeals denied Petitioner's request for leave to appeal. *People v. Arevalo*, 897 N.E.2d 1088 (N.Y. 2008).

### E. The Habeas Corpus Petition

On February 2, 2009, Petitioner filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254(a). *See* Petition. Petitioner reasserts all claims asserted in his direct appeal except for the excessive sentence claim. First, Petitioner argues he received

3

ineffective assistance of counsel under federal and New York State law. Petition at 5. Specifically, Petitioner argues that Trial Counsel, *inter alia,* was inexperienced and stylistically clumsy, wrongfully insisted on a joint trial, wrongfully conducted a unified defense, did not ask proper questions of witnesses and prospective jurors, and failed to make the appropriate arguments on summation. *Id.* Second, Petitioner argues his rights were violated under the Vienna Convention when the police failed to advise him of his right to notify the El Salvador consulate of his detention. *Id.* at 6. Third, Petitioner argues his statement to the police was involuntarily obtained because Petitioner could not read or write, had limited education, was a foreign national, and knew nothing about his rights under the American criminal justice system. *Id.* at 8. Furthermore, Petitioner argues the translator took no measures to ensure Petitioner understood his waiver. *Id.* Lastly, Petitioner argues there was insufficient evidence for the jury to find him guilty beyond a reasonable doubt. *Id.* at 9. As relief, Petitioner asks for a new trial or, in the alternative, a reduction of his sentence. *Id.* at 13. The Court will consider each argument in turn.

## DISCUSSION

### I. Standard of Review

The Court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In order to obtain relief, an individual in custody must demonstrate, *inter alia,* that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal *habeas* review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if

his appeals were decided on the merits." *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365-66 (E.D.N.Y. 2013) (Chen, J.); *see also Philbert v. Brown*, 11-CV-1805, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012) (Garaufis, J.).

"[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (internal quotation marks and citation omitted). As the statute instructs:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002) (citing *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001)) (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

## II. Discussion

### A. Ineffective Assistance of Counsel

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant federal law governing ineffective assistance of counsel claims. Under *Strickland*, counsel is strongly presumed effective and adequate until shown to be otherwise. *Id.* at 689-90. To overcome the

5

presumption of counsel's adequacy and to prove a deprivation of the Sixth Amendment right to effective assistance of counsel, a criminal defendant must show that (1) his counsel's conduct was "outside the wide range of professionally competent assistance," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690, 694.

On federal *habeas* review, in reviewing a state court's application of the *Strickland* standard, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States [D]istrict [C]ourt." *Harrington*, 562 U.S. at 101.

Here, Petitioner argues Trial Counsel was ineffective because of what Petitioner perceived as his inability to work well with Mr. Hernandez's counsel. Dkt. 20-1 ("Def. Appellate Brief") at 26-41. Specifically, Petitioner finds the following actions to have been deficient: Trial Counsel opposed severance of the trial, had occasional tensions with co-counsel, allowed co-counsel to dominate the trial, failed to make an opening statement, failed to distance Petitioner from Mr. Hernandez, made almost no objections during trial, and asked fewer questions upon cross-examination than co-counsel. *Id.* Petitioner further argues that, even apart from Trial Counsel's collaboration with co-counsel, Trial Counsel was inexperienced, dressed poorly, spoke too fast, was visibly nervous, asked inappropriate questions and made inappropriate objections during *voir dire*, engaged in cross-examination harmful to Petitioner, was ignorant of the law, and failed to argue that Petitioner was too drunk to form the requisite

criminal intent. Petition at 6; Def. Appellate Brief at 26-41. For the reasons explained below, Petitioner fails to meet the high standards of *Strickland* and AEDPA. The Court therefore DENIES his request for *habeas* relief on this ground.

### 1. Trial Counsel's Unified Defense Strategy

Trial Counsel opposed his co-counsel's motion for severance of Petitioner's trial from Mr. Hernandez's. Dkt. 20-16 ("Trial Transcript Part I") at 5-7. Under *Strickland's* first prong, opting for a joint trial can fall within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *LoCascio v. United States*, 462 F.Supp.2d 333, 338 (E.D.N.Y. 2005) (Glasser, J.) (recognizing joint trial as legitimate strategy and rejecting claim of ineffective assistance); *Moreno-Godoy v. United States*, 13-CV-2383, 2014 WL 1088300 at *14 (S.D.N.Y. Mar. 20, 2014) (Gorenstein, Mag. J.) (finding trial counsel for defendant had a "legitimate reason to prefer a joint trial"). Furthermore, under *Strickland*'s second prong, joint trials do not necessarily prejudice defendants. *United States v. Levy*, 142 F. App'x 508, 510-511 (2d Cir. 2005). In fact, "there is a preference in the federal system for providing defendants who are indicted together with joint trials." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003).

Here, Petitioner has not shown that Trial Counsel behaved outside the range of professional competence when he decided Petitioner would be better served with a joint trial. Nor has Petitioner shown any prejudice resulting from the joint trial. Trial Counsel's occasional tension with co-counsel during the course of a multi-day joint trial does not show ineffective assistance, but simply that co-counsel strongly desired separate trials, because he believed Trial Counsel might try to save Petitioner by implicating Mr. Hernandez. Trial Transcript Part I at 66-69. Additionally, since Trial Counsel was relatively inexperienced, allowing his co-counsel to take the lead at trial may itself have been a strategic decision. *See, e.g., United States v. Kindle,*

7

925 F.2d 272, 276 (8th Cir. 1991) (noting that a joint defense is a trial tactic which often leads to one attorney taking the lead over the other).

On direct appeal, Petitioner further argued Trial Counsel should have distanced Petitioner from Mr. Hernandez at their joint trial. Def. Appellate Brief at 30-31. However, competent counsel may present a unified defense for tactical reasons without running afoul of *Strickland*. *See, e.g., United States v. Stantini*, 85 F.3d 9, 13, 20 (2d Cir. 1996) (finding joint defense did not violate *Strickland*). At trial, Trial Counsel and co-counsel argued that both Petitioner and Mr. Hernandez were drunk at the time of the encounter with Mr. Apolinar, the encounter was not a robbery but merely an altercation, the information obtained by police was wholly unreliable because the defendants were uneducated and spoke no English, the statements were not videotaped or audiotaped, and the witnesses were not credible. *See, e.g.*, Dkt. 20-13 ("Trial Transcript Part VII") at 31-38 (opening statement); Dkt. 20-21 ("Trial Transcript Part XI") at 36-76 (summations). This defense argument did not pit Mr. Hernandez and Petitioner against each other. Instead, both attorneys argued that both defendants were simply aggressive drunks and not robbers, and were generally incapable of communicating clearly with the police. Petitioner has not shown that distancing Petitioner from Mr. Hernandez had a "reasonable probability" of producing a better result than the actual strategy of Trial Counsel and co-counsel, as required to show ineffective assistance under *Strickland*, 466 U.S. at 694. Furthermore, the joint defense did not prevent Trial Counsel from emphasizing those facts that helped Petitioner's individual case, such as the fact that no stolen property was found on Petitioner. Trial Transcript Part XI at 68-76.

Petitioner notes Trial Counsel did not make a separate opening statement. Trial Transcript Part VII at 31. However, waiving the opening statement is a common trial strategy.

8

*See, e.g., United States v. Salovitz*, 701 F.2d 17, 20-21 (2d Cir. 1983). Here, Trial Counsel's co-counsel made an opening statement highlighting prosecution weaknesses that aided both Mr. Hernandez and Petitioner (for instance, the prosecution's inability to produce the knife used by Mr. Hernandez and Petitioner, and the dubious veracity of both Mr. Hernandez's and Petitioner's confessions). Trial Transcript Part VII at 31-38. Petitioner further notes that Trial Counsel asked fewer questions upon cross-examination than the other attorney. Similar to opening statements, however, "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature and generally will not support an ineffective assistance claim." *Love v. McCray*, 165 F. App'x 48, 49-50 (2d Cir. 2006) (internal quotation marks and citations omitted; ellipses in original). Trial Counsel had strategic reasons for asking fewer questions upon cross-examination: his co-counsel cross-examined each witness first, sometimes extensively, plausibly reducing the need for further questioning. *See, e.g.*, Trial Transcript Part VII at 69-81; Dkt. 20-18 ("Trial Transcript Part VIII") at 4-34; 53-67; Trial Transcript Part X at 25-35. Furthermore, even though Trial Counsel's cross-examination was brief, he used his time to make salient points, such as the lack of any police witnesses who saw Petitioner with Mr. Apolinar's shirt. *See, e.g.*, Trial Transcript Part VIII at 34-39. Consequently, Petitioner has not shown that Trial Counsel's cross-examination strategy was outside the range of professionally competent assistance, or that there was a "reasonable probability" of a different strategy producing a different outcome. *Strickland*, 466 U.S. at 690, 694.

Accordingly, Petitioner has not shown that the state courts unreasonably applied Supreme Court precedent in finding Trial Counsel's decision to pursue a unified defense to be effective assistance of counsel. 28 U.S.C. § 2254(d). Therefore, Petitioner's request for *habeas* relief on this ground is DENIED.

### 2. Trial Counsel's Other Behavior at Trial

Petitioner further claims Trial Counsel was ineffective because he was inexperienced, dressed poorly, spoke too fast, was visibly nervous, asked inappropriate questions and made inappropriate objections during *voir dire*, engaged in "meaningless and disjointed" cross-examination that could have hurt Petitioner's case, was ignorant of the law, and failed to argue that Petitioner was too drunk to form the requisite criminal intent. Petition at 5; Def. Appellate Brief at 26-41. The Court will address each of these objections to Trial Counsel's conduct in turn.

Petitioner first claims Trial Counsel was inexperienced and had stylistic shortcomings. Petition at 5; Def. Appellate Brief at 32-33. However, inexperience is not tantamount to ineffective assistance of counsel. *See, e.g., United States v. Chu*, 11-CV-4752, 2012 WL 6051052, at *9 (S.D.N.Y. Dec. 5, 2012) (Chin, J.); *United States v. Salameh*, 54 F. Supp. 2d 236, 250 (S.D.N.Y. 1999) (Duffy, J.). Nor does Petitioner demonstrate that, absent Trial Counsel's stylistic deficiencies, there was a "reasonable probability" of a different outcome at trial. *Strickland*, 466 U.S. at 694.

Second, Petitioner claims Trial Counsel asked redundant questions at *voir dire* and, over his co-counsel's objections, struck a prospective juror who said she was happy with the police investigation of a crime, prompting the trial court to comment on Trial Counsel's inexperience. Def. Appellate Brief at 32. However, a criminal defense attorney may have strategic reasons to strike a juror who expresses satisfaction with the police. Furthermore, Petitioner's characterization of Trial Counsel's actions, his co-counsel's reaction, and the trial court's response is misleading. The prospective juror Trial Counsel struck was not only satisfied with the police investigation of a crime, but was herself the victim of that crime. Dkt. 20-8 ("Trial

Transcript Part II") at 63. Co-counsel did not object to striking that prospective juror, although he did say he would not have struck her himself. *Id.* at 64. Furthermore, the trial court's comment on Trial Counsel's inexperience was not in response to the strike, but was rather a general comment in response to Trial Counsel's own earlier admission of his inexperience. *Id.* at 65. Therefore, Petitioner has not demonstrated that Trial Counsel's *voir dire* conduct was outside the range of objectively reasonable attorney behavior or prejudiced Petitioner at trial. *Strickland*, 466 U.S. at 690, 694.

Third, Petitioner claims Trial Counsel asked "meaningless and disjointed" questions on cross-examination. Def. Appellate Brief at 35. Attorneys, however, may reasonably adopt a wide range of styles of cross-examination. *See, e.g., Hamilton v. Lee,* 13-CV-4336, 2015 WL 1402316 at *15 (E.D.N.Y. Mar. 27, 2015) (Weinstein, J.) (comments by defense counsel during cross-examination were part of reasonable strategy); *White v. Singletary,* 972 F.2d 1218, 1223 (11th Cir. 1992) ("rambling" and "disjointed" cross-examination style of defense counsel was reasonable tactic), *cert. denied,* 514 U.S. 1131 (1995). Petitioner does not show that Trial Counsel's style fell outside the range of reasonable attorney behavior. Petitioner further notes that Trial Counsel asked questions of a police officer witness which his co-counsel cut off and objected to as likely to elicit answers that could harm their joint case. Def. Appellate Brief at 36-37; Dkt. 20-19 ("Trial Transcript Part IX") at 29-34. However, Petitioner does not show this reflects ineffective assistance by Trial Counsel, rather than simply a disagreement between Trial Counsel and co-counsel. Nor does he show that Trial Counsel's behavior prejudiced Petitioner, as required by *Strickland,* 466 U.S. at 694. Co-counsel cut off Trial Counsel and ended his questioning before Trial Counsel could elicit answers. Trial Transcript Part IX at 34. Even if

11

Trial Counsel's questions could have elicited harmful answers, since in fact they elicited no answers at all, Petitioner has failed to show prejudice.

Fourth, Petitioner argues Trial Counsel was ignorant of the law. Def. Appellate Brief at 38-39. Petitioner points to Trial Counsel's ignorance of the section of New York law which allows motions to vacate convictions. *Id.* at 39. However, Petitioner does not show how this ignorance prejudiced Petitioner, since Trial Counsel was permitted to make the motion to vacate a conviction, and argued for it in an organized and articulate fashion despite his failure to cite the correct section of New York law. *Id.*; Sentencing at 4-7. Petitioner also points to Trial Counsel's misstatement of the statutory minimum sentence as five years rather than three and a half years. Def. Appellate Brief at 39; Sentencing at 7-8; *see also* N.Y. Penal Law §70.02(3)(b). However, since Justice Sullivan sentenced Petitioner to ten years, which is several years greater than the minimum, it is unclear that the misstatement of the minimum sentence had any impact whatsoever. Sentencing at 9. Once again, Petitioner has not shown prejudice under *Strickland*, 466 U.S. at 694.

Fifth, Petitioner argues Trial Counsel should have argued in his summation that Petitioner was too drunk to form the requisite criminal intent. Def. Appellate Brief at 38. New York law generally holds that an intoxicated person may have the requisite criminal intent for a crime; whether a particular defendant's intoxication negates the intent for that particular crime is a question of fact. *People v. Alston*, 838 N.Y.S.2d 671, 673 (2d Dep't 2007). Given the trial court's finding at the suppression hearing that Petitioner was *not* too drunk to knowingly waive his rights on the day of the crime, Trial Counsel may have reasonably decided he was unlikely to be able to successfully demonstrate that Petitioner was too drunk to form the requisite criminal intent. Suppression Ruling at 2. As such, it was reasonable for Trial Counsel to emphasize the

lack of evidence that Petitioner had robbed anyone, rather than Petitioner's intoxication. Trial Transcript Part XI at 68-70.

Furthermore, notwithstanding his speaking less than co-counsel, Trial Counsel actively defended Petitioner at trial in several key respects. Trial Counsel persuaded the trial court to exclude testimony about Petitioner's use of aliases and differently stated birth dates, which the prosecution sought to use to prove Petitioner's "clear attempt to thwart justice...and basically not take responsibility." Trial Transcript Part I at 17-20. Trial Counsel further joined his co-counsel in persuading the court to exclude testimony about Petitioner's alleged membership in the violent gang MS-13 and the alleged connection of Mr. Apolinar's robbery to gang activity. *Id.* at 51-56. In his summation, Trial Counsel presented a theory of the case in which the encounter between Mr. Apolinar, Mr. Hernandez, and Petitioner was simply a drunken fight, rather than a robbery. Trial Transcript Part XI at 68-76. Trial Counsel also argued strongly in summation that the jury could not know if the written statement read back to Petitioner was the same as the oral statement Petitioner had made, and noted that Petitioner's statement was not videotaped or audiotaped. *Id.* at 73-74.

Perhaps most tellingly, Trial Counsel won Petitioner an acquittal for the most serious charge against him, first degree robbery. This is evidence of effective assistance of counsel. *See, e.g., Riddick v. Fischer*, 04-CV-2230, 2004 WL 2181118, at *4 (S.D.N.Y. Sept. 27, 2004) (Lynch, J.) (denying *habeas* relief based on ineffective assistance of counsel where "[the petitioner] was acquitted of the most serious charges against him[.]"). Had Petitioner been convicted for this charge, he would have faced a maximum sentence of twenty-five years in prison. N.Y. Penal Law §70.02 1(a), 3(a). Petitioner was convicted only on the lesser charges. In addition, Trial Counsel won for Petitioner a sentence of ten years rather than the maximum of

fifteen years in prison, contrary to the prosecution's request. Sentencing at 4, 9. This is further evidence that Petitioner received effective assistance of counsel.

Lastly, the strength of the evidence against Petitioner—including multiple eye witnesses, the location of the goods taken from Mr. Apolinar, and the statements from Petitioner and Mr. Hernandez themselves—strongly suggests that Trial Counsel's alleged missteps were not the cause of Petitioner's conviction. Petitioner has not shown otherwise. *See, e.g., Lacey v. Perez,* 10-CV-1460, 2013 WL 1339418 at *11 (E.D.N.Y. Mar. 28, 2013) (Feuerstein, J.) (petitioner failed to show he was prejudiced by trial counsel's supposed error where evidence against petitioner was "overwhelming.").

Accordingly, the Court does not find that the state courts' rejection of Petitioner's ineffective assistance claim was "contrary to, or involved an unreasonable application of," the *Strickland* standard. 28 U.S.C. §2254(d)(1). As such, the Court hereby DENIES *habeas* relief on that ground.

### B. Violation of Rights Under Article 36 of the Vienna Convention

Petitioner, a citizen of El Salvador, claims his conviction was obtained in violation of the Article 36 of the Vienna Convention because the police did not advise him of his right to contact the El Salvadoran consulate before his statement was made. Petition at 6. Petitioner's counsel presented this argument to the trial court during the suppression hearing; the trial court rejected it. Suppression Hearing Part II at 73-76. The Second Department did not specifically address the claim in its denial of Petitioner's appeal. *Arevalo,* 862 N.Y.S.2d at 587-88.

When a state court rejects all of a criminal defendant's claims without specifically discussing a federal claim, a rebuttable presumption exists that the state court's rejection of the unmentioned federal claim was an adjudication on the merits, and therefore entitled to AEDPA

deference. *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013); *see also* 28 U.S.C. § 2254(d). Regardless of this rebuttable presumption, Petitioner's Vienna Convention claim is meritless. Article 36 of the Vienna Convention provides foreign nationals with the right to notify their consulate upon detention. Vienna Convention on Consular Relations and Optional Protocol on Disputes, art. 36(1)(b), April 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. The Supreme Court, however, has found suppression to be an inappropriate remedy for violations of Article 36. *Sanchez-Llama v. Oregon*, 548 U.S. 331, 349-350 (2006). Furthermore, there is no clear federal precedent that an Article 36 violation requires reversal of a conviction. Some federal circuits, though not the Second Circuit, have held exactly the opposite. *See, e.g., U.S. v. Hurtado*, 195 Fed.Appx. 132 (4th Cir. 2006) ("Just as a violation of Article 36 does not warrant suppression of incriminating statements, it does not require reversal of a conviction."); *Ortiz v. Ercole*, 07-CV-2178, 2007 WL 2086456, at*15-16 (S.D.N.Y. July 23, 2007) (Peck, Mag. J.) (collecting cases and finding a consensus among federal circuits that suppression, dismissal of an indictment, or reversal of a conviction are not appropriate remedies for violations of Article 36). Accordingly, the Second Department's denial of Petitioner's Vienna Convention argument was not contrary to clearly established Supreme Court precedent. As such, the Court hereby DENIES Petitioner's request for *habeas* relief based on Article 36 of the Vienna Convention.

### C. Statement Involuntarily Obtained

To prove the valid waiver of a right, "the government must show (1) that relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (internal citation omitted). Courts consider the "totality of the circumstances" to determine the voluntariness of a waiver of the rights under *Miranda v.*

15

*Arizona*, 384 U.S. 436 (1966). *See, e.g., United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012). "Relevant factors . . . include the accused's age, his lack of education or low intelligence, the failure to give *Miranda* warnings, the length of detention, the nature of the interrogation, and any use of physical punishment." *Id.* (internal citation and quotation marks omitted). No one factor is dispositive. *Alvarez v. Keane*, 92 F. Supp. 2d 137, 150 (E.D.N.Y. 2000) (Block, J.). For instance, even an intoxicated defendant may knowingly and intelligently waive his *Miranda* rights provided he "appreciate[s] the nature of the waiver." *Id.* (internal citations omitted). A defendant's competence to make a valid waiver is a "heav[il]y fact-specific inquiry." *United States v. Murgas*, 967 F. Supp. 695, 706 (N.D.N.Y. 1997) (Munson, J.) (internal citation omitted).

In the instant case, Petitioner claims his statement to the police, in which Petitioner admitted to jointly robbing Mr. Apolinar with Mr. Hernandez, was involuntarily obtained because of his limited education and lack of understanding of his rights under the criminal justice system. Petition at 8. On direct appeal, Petitioner also claimed he was intoxicated when he made his statement and therefore the statement was involuntary. Def. Appellate Brief at 50-58. The Second Department upheld the trial court's finding that Petitioner "knowingly, intelligently, and voluntarily" waived his rights under *Miranda*, 384 U.S. 436. *Arevalo*, 862 N.Y.S.2d at 587.

At the suppression hearing, Detective Luis Salazar, who was fluent in Spanish, testified that he read a Spanish-language *Miranda* card out loud to Petitioner upon Petitioner's arrest. Suppression Hearing Part I at 68-70; Suppression Hearing Part II at 6-13. Petitioner indicated he understood his rights and waived them by signing the card. Suppression Hearing Part I at 68-70. After Detective Salazar questioned Petitioner in Spanish, Petitioner admitted to using a knife to rob Mr. Apolinar with Mr. Hernandez. Dkt. 20-20 ("Trial Transcript Part X") at 70-74.

Detective Salazar then read back Petitioner's statement to him in Spanish, and Petitioner confirmed its accuracy. *Id.* At the suppression hearing, the trial court found Detective Salazar's testimony to be credible and to show a valid waiver of Petitioner's rights. Suppression Ruling at 2. The Second Department upheld the suppression court's findings. *Arevalo*, 862 N.Y.S.2d at 587. Specifically, the Second Department found the evidence did not establish Petitioner had been too intoxicated to understand the meaning of his waiver. *Id.*

Here, the Court finds the state courts' conclusion that Petitioner's statements were voluntary were not "contrary to" and did not "involve an unreasonable application of[] clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Furthermore, the state courts' decisions were not "based on an unreasonable determination of the facts[.]" 28 U.S.C. §2254(d)(2). Limited education and unfamiliarity with the criminal justice system do not render waivers of *Miranda* rights *per se* invalid. *See, e.g., Murgas*, 967 F. Supp. at 707 (defendant's limited education, low IQ, and impaired reading ability did not render his waiver invalid). There is no evidence that Petitioner's limited education and unfamiliarity with the criminal justice system had any effect on the instant case, let alone that it rendered his waiver invalid, given Detective Salazar's explanations of Petitioner's rights in Spanish. Suppression Hearing Part I at 68-70. The Court also finds no reason to disturb the state courts' findings that Petitioner was not too intoxicated to understand the meaning of his waiver. Additionally, Petitioner has presented no evidence to suggest otherwise. Therefore, the Court hereby DENIES Petitioner's request for *habeas* relief on the grounds that his statement was involuntarily obtained.

17

### D. Jury Verdict Based on Insufficient Evidence

The Second Department found that (1) the evidence before the jury was legally sufficient to find Petitioner guilty beyond a reasonable doubt, and (2) the jury's verdict convicting Petitioner was "not against the weight of the evidence." *Arevalo*, 862 N.Y.S.2d at 587-88. Petitioner opposes the Second Department's findings on both counts. Petition at 9.

As an initial matter, Petitioner's claim that the guilty verdict was against the weight of the evidence is not cognizable on habeas review because it is a "pure state law claim" grounded in N.Y. Crim. Proc. Law § 470.15(5). *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (Block, J.) (internal citation omitted).

However, Petitioner's legal insufficiency claim is cognizable because it relies on the "federal due process principles" established by the Fourteenth Amendment. *Id.* (citation omitted). Accordingly, the Court cannot disturb the Second Department's holding unless it finds the Second Department's holding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 42 U.S.C. § 2254(d). The Supreme Court has ruled that a conviction must be upheld if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Claudio v. Portuondo*, 74 F. App'x 120, 122 (2d Cir. 2003) (internal citations omitted).

In this case, Petitioner was convicted of Second Degree Robbery, Fourth Degree Grand Larceny, and Fifth Degree Criminal Possession of Stolen Property. Sufficient evidence exists to

support the Second Department's holding on the convictions for these crimes because a significant amount of testimony presented at trial inculpated Petitioner. For example, at trial, Mr. Apolinar testified Petitioner robbed him with Mr. Hernandez, using a knife. Trial Transcript Part IX at 39-74. Mr. Apolinar's sister, Gabriella, and her boyfriend, Francisco Roque confirmed Mr. Apolinar's testimony. Trial Transcript Part X at 12-36, Trial Transcript Part XI at 6-28. A police officer testified to finding Mr. Apolinar's necklaces in Mr. Hernandez's pocket and Mr. Apolinar's jersey a short distance away from Petitioner. Trial Transcript Part VII at 47-50; Trial Transcript Part VIII at 15-17. Furthermore, Petitioner and Mr. Hernandez each admitted separately to the police to jointly robbing Mr. Apolinar. Trial Transcript Part X at 68-74. The Second Department found this considerable corroborated evidence sufficient to permit a rational jury to convict Petitioner of (1) forcibly stealing Mr. Apolinar's goods with Mr. Hernandez's aid, constituting Second Degree Robbery under N.Y. Penal Law § 160.10(1); (2) stealing the goods from Mr. Apolinar's person, constituting Fourth Degree Grand Larceny under N.Y. Penal Law §155.30(5); and (3) knowingly possessing stolen goods with the intent to benefit himself or impede Mr. Apolinar's recovery of the goods, constituting Fifth Degree Criminal Possession of Stolen Property under N.Y. Penal Law §165.40. The Court does not find that the Second Department's decision was "contrary to, or involved an unreasonable application of, clearly established [f]ederal law" or was "based on an unreasonable determination of the facts[.]" 28 U.S.C. §2254(d). Accordingly, the Court hereby DENIES Petitioner's request for *habeas* relief on the grounds of legally insufficient evidence of guilt.

## CONCLUSION

For the reasons stated herein, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is DENIED in its entirety. A certificate of appealability shall not issue. *See* 28

U.S.C. § 2253. The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 13, 2015
Brooklyn, New York